## RECORD NO. 23-1696

# IN THE

# 𝔘nited 𝔖tates 𝔆ourt of 𝔄ppeals

## FOR THE FOURTH CIRCUIT

**WEST VIRGINIA HIGHLANDS CONSERVANCY; SIERRA CLUB**

*Plaintiffs-Appellees,*

**And**

**APPALACHIAN HEADWATERS, INC., Nonparty in whose favor an order has been entered**     *Party-in-Interest-Appellee,*

**v.**

**ERP ENVIRONMENTAL FUND, INC.; RECEIVERSHIP ESTATE OF ERP ENVIRONMENTAL FUND, INC.**

*Defendants-Appellants,*

**And**

**VCLF LAND TRUST, INC., Nonparty against whom an order may be enforced**     *Party-in-Interest-Appellant.*

**And**

**DOSS SPECIAL RECEIVER, LLC,**

*Receiver*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA AT HUNTINGTON**

### OPENING BRIEF OF DEFENDANTS-APPELLANTS

Christopher M. Hunter
M. Shane Harvey
JACKSON KELLY PLLC
P. O. Box 553
Charleston, West Virginia 25322
Telephone: (304) 340-1000
chunter@jacksonkelly.com
sharvey@jacksonkelly.com

   Counsel for Defendants-Appellants
   ERP Environmental Fund, et al.

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 23-1696 _____    Caption: West Virginia Highlands Conservancy, et al. v. ERP Environmental Fund, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

ERP Environmental Fund, Inc. _____
(name of party/amicus)

_____

who is Appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.  Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?  ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

    The Special Receiver appointed to oversee the (Appellant) Receivership Estate of ERP Environmental
    Fund, Inc. is making these disclosures on behalf of ERP Environmental Fund, Inc. under the authority
    granted to him under Paragraph 26.n. of the Kanawha County Circuit Court (Business Division's) Dec. 22,
    2020 appointment order, which gives the Special Receiver authority to represent ERP Environmental
    Fund, Inc. in litigation. These disclosures are made to the best of the Special Receiver's knowledge.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
    other publicly held entity?  ☐ YES ☑ NO
    If yes, identify all such owners:

i

4.  Is there any other publicly held corporation or other publicly held entity that has a direct
    financial interest in the outcome of the litigation?                           ☐YES ☑NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
    If yes, identify any publicly held member whose stock or equity value could be affected
    substantially by the outcome of the proceeding or whose claims the trade association is
    pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?                            ☐YES ☑NO
    If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
    party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
    caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
    corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?            ☐YES ☑NO
    If yes, the United States, absent good cause shown, must list (1) each organizational
    victim of the criminal activity and (2) if an organizational victim is a corporation, the
    parent corporation and any publicly held corporation that owns 10% or more of the stock
    of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Christopher M. Hunter _____     Date: July 31, 2023 _____

Counsel for: ERP Environmental Fund, Inc. _____

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 23-1696     Caption: West Virginia Highlands Conservancy, et al. v. ERP Environmental Fund, Inc.

Pursuant to FRAP 26.1 and Local Rule 26.1,

Receivership Estate of ERP Environmental Fund, Inc.
(name of party/amicus)

who is _____ Appellant _____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
   If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct
   financial interest in the outcome of the litigation?                    ☐YES ☑NO
   If yes, identify entity and nature of interest:


5. Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
   If yes, identify any publicly held member whose stock or equity value could be affected
   substantially by the outcome of the proceeding or whose claims the trade association is
   pursuing in a representative capacity, or state that there is no such member:


6. Does this case arise out of a bankruptcy proceeding?                    ☐YES ☑NO
   If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
   party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
   caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
   corporation that owns 10% or more of the stock of the debtor.


7. Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
   If yes, the United States, absent good cause shown, must list (1) each organizational
   victim of the criminal activity and (2) if an organizational victim is a corporation, the
   parent corporation and any publicly held corporation that owns 10% or more of the stock
   of victim, to the extent that information can be obtained through due diligence.


Signature: /s/ Christopher M. Hunter                Date:    July 7, 2023

Counsel for:    Receivership Estate of ERP Environmental Fund, Inc.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS...........................................................................v

TABLE OF AUTHORITIES ........................................................... vi

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................1

STATEMENT OF THE CASE..............................................................2

    A.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY:................................2

    B.    THE PROVISIONS OF THE CONSENT DECREE AT ISSUE: .................................5

SUMMARY OF THE ARGUMENT .....................................................9

STANDARD OF REVIEW ...............................................................11

ARGUMENT ...............................................................................12

    I.    NON-PARTY PERMIT TRANSFEREES ARE NOT "SUCCESSORS AND/OR ASSIGNS." .................................................................................12

    II.    PARAGRAPH 25 PLAINLY PROVIDES THAT THE TRANSFEREE OF THE CHESTNUT OAK SURFACE MINE PERMIT IS NOT BOUND BY PARAGRAPH 63'S PROHIBITIONS ON SURFACE MINING. ...................................................26

CONCLUSION ............................................................................31

REQUEST FOR ORAL ARGUMENT .................................................32

## <u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*AA Sales & Assocs., Inc. v. JT&T Prod. Corp.*,
   No. 98 C 7954, 2000 WL 1557940 (N.D. Ill. Oct. 19, 2000).......................14, 15

*Am. Canoe Ass'n v. Murphy Farms, Inc.*,
   326 F.3d 505 (4th Cir. 2003) ...........................................................................11

*Antrim Min., Inc. v. Davis*,
   775 F. Supp. 165 (M.D. Pa. 1991)............................................................. 12, 27

*Apache Stainless Equip. Corp. v. Infoswitch, Inc.*,
   No. 18-CV-04879-JMY, 2020 WL 4195275 (E.D. Pa. July 21, 2020)..............13

*Atchison Casting Corp. v. Dofasco, Inc.*,
   889 F. Supp. 1445 (D. Kan. 1995)....................................................................13

*Christensen v. Northrop Grumman Corp.*,
   125 F.3d 847 (4th Cir. 1997) ...........................................................................12

*Commercial Union Ins. Co. v. Charleston Marine Leasing Co.*,
   1995 WL 224046 (4th Cir. 1995) .....................................................................25

*Consumer Fin. Prot. Bureau v. Klopp*,
   957 F.3d 454 (4th Cir. 2020) ..................................................................... 11, 23

*Corder v. Antero Resources Corp.*,
   57 F.4th 384 (4th Cir. 2023) ............................................................................25

*Cotiga Dev. Co. v. United Fuel Gas Co.*,
   128 S.E.2d 626 (W.Va. 1962)...........................................................................25

*Gismondi, Paglia, Sherling, M.D., P.C. v. Franco*,
   206 F. Supp. 2d 597 (S.D.N.Y. 2002) ..............................................................13

*Goodman v. Resolution Trust Corp.*,
   7 F.3d 1123 (4th Cir. 1993) .............................................................................28

*Holland v. New Era Coal Co., Inc.*,
   179 F.3d 397 (6th Cir. 1999) ..................................................................... 21, 22

*Holland v. Williams Mtn. Coal Co.*,
   2000 WL 284298 (D.D.C. Feb. 24, 2000) ........................................................21

*In re Total Realty Mgt., LLC*,
   706 F.3d 245 (4th Cir. 2013) ...........................................................................23

*Larkin v. City of Burlington*,
   172 Vt. 566, 772 A.2d 553 (2001).....................................................................13

*Lodge No. 954 v. Shawnee Indus., Inc.*,
   224 F. Supp. 347 (W.D. Okla. 1963) ................................................................13

*M&G Polymers USA, LLC v. Tackett*,
    574 US 427 (2015) ............................................................................24
*Martin v. Wilks*,
    490 U.S. 755 (1989) ..........................................................................12
*Miramar Police Officers' Ret. Plan v. Murdoch*,
    No. CV 9860-CB, 2015 WL 1593745 (Del. Ch. Apr. 7, 2015) ................. passim
*Philadelphia Elec. Co. v. Hercules, Inc.*,
    762 F.2d 303 (3d Cir. 1985) ............................................................29
*Quadrant Structured Prod. Co. v. Vertin*,
    23 N.Y.3d 549, 992 N.Y.S.2d 687, 16 N.E.3d 1165 (2014) ..............................23
*UMWA 1992 Ben. Plan v. Lecki Smokeless Coal Co.*,
    201 B.R. 163 (S.D.W. Va. 1996) ......................................................21
*United States v. Armour & Co.*,
    402 U.S. 673 (1971) ...................................................................... passim
*United States v. Carolina Transformer Co.*,
    978 F.2d 832 (4th Cir. 1992) ...........................................................14
*United States v. City of Chicago*,
    978 F.2d 325 (7th Cir. 1992) ...........................................................12
*Volvo Const. Equip. N.A. Inc. v. CLM Equip Co.*,
    386 F.3d 581 (4th Cir. 2004) ...........................................................25
*Willie M. v. Hunt*,
    657 F.2d 55 (4th Cir. 1981) .............................................................11
*Willits v. Peabody Coal Co.*,
    188 F.3d 510 (6th Cir. 1999) ...........................................................25

Statutes

28 U.S.C. § 1291 ..................................................................................1
28 U.S.C. § 1331 ..................................................................................1
30 U.S.C. § 1270 ..............................................................................1, 2
33 U.S.C. § 1365 ..............................................................................1, 2

Regulations

30 C.F.R. § 701.5 .............................................................................3, 20
W.Va. Code R. § 38-2-2.122 ...............................................................20

vii

## JURISDICTIONAL STATEMENT

The action below was initiated when the Plaintiff-Appellees filed a citizen suit under the federal Clean Water Act, 33 U.S.C. § 1365, and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1270. The citizen suit was resolved with a consent decree that was approved by the district court and subsequently modified twice with the district court's approval. The parties consented to the district court's continued jurisdiction over the enforcement of the Consent Decree pursuant to 28 U.S.C. § 1331. (JA298). At issue here is the district court's May 26, 2023, final order granting Plaintiff-Appellees' Motion to Enforce the Second Modified Consent Decree ("Consent Decree" or "Decree"), wherein the district court found that the Decree's prohibition on surface mining "is binding on third-party permit transferees as 'successors and/or assigns' of the Defendant[.]" (JA537).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. The notice of appeal was timely filed on June 23, 2023, twenty-eight days after the entry of the district court's final order. (JA538).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Whether the district court properly interpreted the Second Modified Consent Decree when it held that prohibitions on surface mining set forth in Paragraph 63

1

of the Decree apply to third-party permit transferees as "successors and/or assigns."

## STATEMENT OF THE CASE

### A.   RELEVANT BACKGROUND AND PROCEDURAL HISTORY:

This case arises from an action for declaratory and injunctive relief filed by Plaintiff-Appellees on February 18, 2011, pursuant to the Clean Water Act ("CWA"), 33 U.S.C. § 1365, and Surface Mining Control and Reclamation Act ("SMCRA"), 30 U.S.C. § 1270. (JA034). On March 15, 2012, the district court entered a consent decree resolving Plaintiff-Appellees' claims. (JA137-195). Defendant Patriot Coal Corporation and substantially all of its subsidiaries (collectively, the "Patriot Entities") subsequently filed for reorganization under Chapter 11 of the U.S. Bankruptcy Code. As a consequence of the Chapter 11 process, ERP Environmental Fund, Inc. ("ERP") was substituted as a defendant for the Patriot Entities. The parties thereafter negotiated a Second Modified Consent Decree ("Consent Decree" or "Decree") filed on October 10, 2016. (JA291-385).

Following the entry of the Second Modified Consent Decree, the West Virginia Department of Environmental Protection ("WVDEP") sued ERP in the Circuit Court of Kanawha County.  In that lawsuit, WVDEP alleged that ERP lacked any liquid assets and sought the appointment of a receiver to take control of ERP's existing assets. (JA396-406). Doss Special Receiver, LLC (the "Special

Receiver" or "Receiver") was appointed by temporary order dated March 27, 2020. (JA408-411). The case was later referred to the Business Court Division, where the appointment of the Receiver was affirmed. (JA431-458). The Business Court placed all of ERP's assets within the Receivership Estate and required the Receiver to manage ERP's business and operations, which include limited assets but millions of dollars in reclamation liabilities. (JA431-458). The present dispute centers on whether the Consent Decree allows the Receiver to transfer permits and execute coal mining subleases at the Chestnut Oak Surface Mine.

Permit No. S503308 is a surface mine permit held by ERP that was issued in 2010 for the Chestnut Oak Surface Mine in Lincoln County, West Virginia. Active coal removal on the permit began in 2011 and continued through ERP's assumption of the permit in 2016. The Receiver is uncertain when mining by ERP may have ceased, but like many ERP sites, the Chestnut Oak Surface Mine permit was abandoned by ERP, and currently remains unreclaimed. The permit is under WVDEP notice of violation ("NOV") for failure to reclaim thousands of feet of highwall.[1]

Mining at the Chestnut Oak permit is necessary to generate sufficient quantities of dirt and rock to eliminate the unreclaimed highwall and return the

---

[1] SMCRA mandates the removal of "highwall," which is defined as "the face of exposed overburden and coal in an open cut of a surface coal mining activity or for entry to underground mining activities." 30 C.F.R. § 701.5.

unreclaimed portions of the permit back to their approximate original contour ("AOC") in accordance with SMCRA.    The ERP Receivership Estate does not have the resources to properly mine and reclaim the Chestnut Oak Surface Mine to AOC and bring the site into compliance with West Virginia's surface mining laws, but the Receiver has been approached by multiple third parties with such resources. These third parties have expressed an interest in taking transfer of the Chestnut Oak Surface Mine Permit and fully reclaiming it, provided they can remove coal and offset the cost of overburden removal, NOV remediation, and reclamation.

The Receiver sought authorization from the Kanawha County Circuit Court to enter into a permit transfer agreement for the Chestnut Oak Surface Mine.  The court granted the Receiver's motion by order dated November 16, 2022, thereby authorizing the Receiver to enter into the proposed permit transfer agreement. However, on November 14, 2022, Plaintiffs invoked the dispute resolution provisions of the Second Modified Consent Decree and notified the Receiver of their belief that the proposed transfer of the Chestnut Oak Surface Mine would violate Paragraph 63 of the Decree, which provides that "Substituted Defendant [ERP] and its Affiliated Companies shall not conduct Surface Mining at any location formerly owned or operated by Patriot Coal Corporation or one of Patriot Coal Corporation's subsidiaries, except that Surface Mining necessary and incidental to reclamation."  (JA334).

The parties were unable to reach an agreement and filed cross-motions briefing the issue before the district court.[2] On March 2, 2023, the district court entered a Memorandum Opinion and Order wherein it found that the "Decree's restrictions on surface mining, as laid out in Paragraph 63, are binding upon any third-party permit transferee" but deferring disposition "as to the question of whether proposed surface mining at Chestnut Oak is necessary and incidental to reclamation, pending further briefing." (JA521).

Receiver subsequently stipulated that "the mining proposed by the third-party transferee would not meet the district court's interpretation of 'necessary and incidental' to reclamation" and requested that the district court enter a final order resolving Plaintiff-Appellees' Motion to Enforce the Second Modified Consent Decree. (JA526-527). The district court entered its final order on May 26, 2023, from which Receiver appeals to this Court. (JA535-537).

B.    THE PROVISIONS OF THE CONSENT DECREE AT ISSUE:

Paragraph 63 of the Consent Decree prohibits surface mining that is not "necessary and incidental to reclamation," as follows:

> Notwithstanding any other provision of this Second
> Modified Consent Decree, from the Effective Date of this

---

[2] Plaintiff-Appellees filed a "Motion to Enforce the Second Modified Consent Decree" (JA474) and memorandum in support thereof on December 15, 2022. On that same date, Receiver filed its "Motion to Resolve Dispute Under the Second Modified Consent Decree" (JA258) and accompanying memorandum in support. The parties filed their respective responses on December 22, 2022.

> Second Modified Consent Decree, Substituted Defendant
> and its Affiliated Companies shall not conduct Surface
> Mining at any location formerly owned or operated by
> Patriot Coal Corporation or one of Patriot Coal
> Corporation's subsidiaries, except that Surface Mining
> necessary and incidental to reclamation. To the extent
> there is a conflict between this Paragraph 63 and any
> other Paragraph in Section VIII of this Second Modified
> Consent Decree, Paragraph 63 shall control.

(JA334).

By its express terms, the prohibitions in Paragraph 63  are limited to

"Substituted Defendant [ERP] and its Affiliated Companies."(JA334) However,

Appellees argue (and the district court found) that Paragraph 63 also applies to

third-party permit transferees.  According to  Appellees, permit transferees are

bound because they are  "successors and/or assigns" pursuant to Paragraph 24 of

the Consent Decree, which provides as follows:

> The provisions of this Second Modified Consent Decree
> apply to and are binding upon Plaintiffs and those with
> authority to act on their behalf, including but not limited
> to, their officers, directors, and staff; upon Substituted
> Defendant and any of its respective successors and/or
> assigns; and upon other persons or entities otherwise
> bound by the law.

(JA298).

The Receiver, by contrast, argues that Paragraph 25 governs permit

transfers and does not require compliance with Paragraph 63 of the Decree:

> Except for those restrictions on Large Scale Surface
> Mining set forth in Paragraphs 54 through 58 herein, the

6

applicability and duration of which shall be governed solely by the terms of Section VIII, **and the restrictions on Surface Mining set forth in Paragraph 63**, no transfer of ownership or operation of any Facility shall relieve Substituted Defendant of its obligation to ensure that the terms of this Second Modified Consent Decree are implemented, provided, however that, prior to any transfer, any party desiring to transfer ownership or operation of any Facility shall provide a copy of this Second Modified Consent Decree to the proposed transferee and require the transferee to provide written confirmation to the Court acknowledging the terms of the Second Modified Consent Decree and that the transferee will be bound by those terms. In such event, the transferring party shall no longer be subject to this Decree. There shall be no requirement to provide written confirmation to the Court if the ultimate parent of Substituted Defendant will change as a result of a transaction, but the Substituted Defendant owning or operating the Facility will not change. In any event, all transferees, subsequent owners, and operators shall be bound by the terms of this Second Modified Consent Decree, consistent with applicable law.

(JA298-299 (emphasis added)).   The Receiver further argues that Paragraph 25

only imposes duties with respect to the transfer of a "Facility" and that Permit No.

S503308, the Chestnut Oak Surface Mine permit, is not a "Facility.",[3]

---

[3] Paragraph 27.l. of the Decree defines "Facility" as "Covered Outfalls and mining operations subject to the Covered Permits[.]" (JA301). Pursuant to Paragraph 27.g., the "Cover Permits" include "WV/NPDES Permit Nos. WV0099520, WV0093751, WV0096920, WV0096962, WV1014684, WV1017225, WV0099392, WV1016776, WV1020889, and WV1021028." (JA300). The WV/NPDES Permit associated with the Chestnut Oak Surface Mine permit (S503308) is WV1019759, which is not a "Covered Permit."

Finally, the Receiver submits that the district court's interpretation of Paragraph 24 of the Decree is inconsistent with Paragraph 61:

> Notwithstanding any other provision of this Second Modified Consent Decree, including the terms of Paragraph 25, the restrictions on Large Scale Surface Mining set forth in Paragraphs 54 through 58 shall apply to Substituted Defendant and its Affiliated Companies; provided, however, that nothing in this Second Modified Consent Decree shall be construed to extend any obligation of Substituted Defendant to any of its Affiliated Companies with respect to performing any selenium treatment or other environmental compliance obligation that is not already so extended. The selling, transferring, spinning off, or otherwise relinquishing control of Substituted Defendant or an Affiliated Company shall not relieve that entity from the limitations on Large Scale Surface Mining established in Paragraphs 54 through 58 of this Second Modified Consent Decree. Provided, however, that the limitations on Large Scale Surface Mining shall not apply to or bind any Substituted Defendant or any of its Affiliated Companies that are sold, spun off, transferred or otherwise separated from their parent in liquidation in bankruptcy. **The limitations on Large Scale Surface Mining shall not transfer to (a) any purchaser of any asset (other than stock) of Substituted Defendant or any of its Affiliated Companies or any of such purchaser's other subsidiaries or affiliates or** (b) any purchaser of the stock of either Substituted Defendant or any of its Affiliated Companies or any of such purchaser's other subsidiaries or affiliates (but after such stock purchase shall continue to apply to Substituted Defendant and its Affiliated Companies after such purchase, except as provided in the preceding sentence). Provided, however, that if Substituted Defendant and/or any of its Affiliated Companies cease to exist for any reason, the limitations on Large Scale Surface Mining, including the provisions of Paragraphs 54 through 58, shall remain applicable to

8

> the mines owned and/or operated by Patriot Coal
> Corporation or any of its subsidiaries on May 12, 2015 as
> if Substituted Defendant or the relevant Affiliated
> Company or Companies still existed.

(JA332-333 (emphasis added)).

## SUMMARY OF THE ARGUMENT

Consent decrees generally do not bind non-parties, and parties may not restrict the rights of third parties by including provisions in a consent decree purporting to bind them. In keeping with this principle, Paragraph 63 of the Decree by its express terms only binds ERP and its Affiliated Companies, not third-party transferees.

Appellees claim that permit transferees are nevertheless subject to Paragraph 63 because Paragraph 24 of the Consent Decree binds "successors and/or assigns" of ERP. This position finds no support in the law, however. As explained below, "successors and/or assigns" are entities that, through amalgamation, consolidation, or other legal succession, become vested with the rights and assume the burdens of another entity. For instance, a corporation that purchases the stock of another corporation becomes a "successor" and/or "assign" of the seller. Consistent with this, courts have routinely held that mere acquisitions of assets or property (such as a mining permit) do not make the acquiror a "successor and/or assign."

Rather than heed this authority, the district court improperly equated the boilerplate term "successors and/or assigns," as used in the Second Modified

Consent Decree, with the more specific term, "successor in interest," as defined under SMCRA and the West Virginia Surface Mining and Reclamation Act ("WVSCMRA"). These terms, however, are not interchangeable. Unlike a "successor" or "assign," a "successor in interest" is generally defined as one who follows another in ownership or control of a specific property or asset, but who does not assume all the rights and burdens of the seller. For instance, a purchaser in an asset sale is a "successor in interest." Accordingly, "successor" and "successor in interest" are distinct terms of art with markedly different usages, and the district court should not have equated them.

Additionally, the district court's focus on Paragraph 24 was misplaced. Paragraph 25 is the paragraph in the Decree that specifically addresses permit transfers. Paragraph 25's requirements, however, only extend to transferees of a "Facility" and expressly exempt such transferees from compliance with Paragraph 63 and the Decree's other prohibitions on surface mining. Clearly, the parties intended that third-party permit transferees would be able to mine the transferred permits, and at any rate, there is nothing in the Consent Decree that would prevent a third-party transferee from mining at Chestnut Oak, Permit No. S503308, which is not a "Facility."

Accordingly, the Receiver respectfully requests that this Court reverse the district court's order granting Plaintiff-Appellees' Motion to Enforce the Second Modified Consent Decree.

## STANDARD OF REVIEW

"The interpretation of a negotiated order is a legal question that [the Court] review[s] de novo." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 462 (4th Cir. 2020); *see also Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 512 (4th Cir. 2003) ("[T]he construction of disputed terms of a consent order is an issue of law that is freely reviewable on appeal."). The district court's authority is "constrained by the language of the decree", which this Court interprets using "traditional rules of contract interpretation." *Id.* at 462. "[T]he district court 'has no authority to expand or contract the judgment's terms to reflect what might have been.'" *Id.* (quoting *Willie M. v. Hunt*, 657 F.2d 55, 60 (4th Cir. 1981)).

Because consent decrees "are entered into by parties to a case after careful negotiation has produced agreement on their precise terms", consent decrees "cannot be said to have a purpose." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971). Thus, "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy [its] purposes." *Id.* at 682.

11

## **ARGUMENT**

### I.    NON-PARTY PERMIT TRANSFEREES ARE NOT "SUCCESSORS AND/OR ASSIGNS."

"In general, a judgment or decree among parties to a lawsuit does not bind a third party who has not been made a party to the litigation." *United States v. City of Chicago*, 978 F.2d 325, 330 (7th Cir. 1992) (citing *Martin v. Wilks,* 490 U.S. 755 (1989)). "[P]arties may not restrict the legal rights of non-parties by including in a consent decree provisions purporting to bind them." *Antrim Min., Inc. v. Davis*, 775 F. Supp. 165, 168 (M.D. Pa. 1991).

In keeping with this principle, courts have consistently refused to find that contract or consent decree liability follows isolated transfers of property based on "successors and/or assigns" language, such as that at issue here. *See Christensen v. Northrop Grumman Corp.*, 125 F.3d 847 (4th Cir. 1997) ("[W]hile the plan does not specifically define 'successor,' with regard to corporations, 'generally [the term] means another corporation which, through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of the first corporation.' *Black's Law Dictionary* 1431 (6th ed.1990)"); *see also, e.g.*, *Miramar Police Officers' Ret. Plan v. Murdoch*, No. CV 9860-CB, 2015 WL 1593745, at *9 (Del. Ch. Apr. 7, 2015) ("Language providing that a contract is binding upon one's 'transferees, successors or assigns' (or the like) is intended to bind entities that assume, by legal succession, one's rights and obligations under

the contract—*not* entities to which one may transfer or assign *other* assets or liabilities."); *Larkin v. City of Burlington*, 172 Vt. 566, 569, 772 A.2d 553, 557 (2001) ("The boilerplate language 'successors and assigns,' when referring to corporations, ordinarily applies only when another corporation, through legal succession, assumes the rights and obligations of the first corporation."); *Atchison Casting Corp. v. Dofasco, Inc.*, 889 F. Supp. 1445, 1459 (D. Kan. 1995) ("With reference to corporations, the term [successor] ordinarily means another corporation which, through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of the first corporation.").

Simply purchasing the assets of another company does not make a purchaser a "successor." *See*, *e.g.*, *Apache Stainless Equip. Corp. v. Infoswitch, Inc.*, No. 18-CV-04879-JMY, 2020 WL 4195275, at *5 (E.D. Pa. July 21, 2020) ("Because Apache only acquired certain assets, and did not assume the liabilities of Mepaco, Apache did not succeed or become a successor to Mepaco."); *Gismondi, Paglia, Sherling, M.D., P.C. v. Franco*, 206 F. Supp. 2d 597, 600 (S.D.N.Y. 2002) (explaining that defendant was not a "successor" of GPS, rather it merely "bought GPS's assets . . ., subleased its premises, and employed its physicians and its other personnel."); *Atchison*, 889 F. Supp. at 1458–59 (purchase of steel making assets on a book value bases did not render purchaser a "successor" under contract); *Int'l Ass'n of Machinists & Loc. Lodge No. 954 v. Shawnee Indus., Inc.*, 224 F. Supp.

347, 352 (W.D. Okla. 1963) ("The purchase of certain of the assets of Jonco and the assumption of some of their outstanding obligations in and of themselves do not make Shawnee Industries a legal successor of Jonco and as such bound by the collective bargaining agreement.").

In finding that third-party permit transferees are "successors and/or assigns" of ERP, the district court employed a usage of "successors and/or assigns" that is patently inconsistent with the established usage of that phrase. *See United States v. Carolina Transformer Co.*, 978 F.2d 832, 838 (4th Cir. 1992). Generally, "[t]o be a successor, a corporation must entirely absorb its predecessor: its business, assets, rights and liabilities." *AA Sales & Assocs., Inc. v. JT&T Prod. Corp.*, No. 98 C 7954, 2000 WL 1557940, at *2 (N.D. Ill. Oct. 19, 2000)), *aff'd sub nom. AA Sales & Assocs., Inc. v. JT & T Prod. Corp*., 24 F. App'x 605 (7th Cir. 2001).

Indeed, the district court's interpretation of the Consent Decree leads to absurd results. *See AA Sales & Assocs., Inc.* 2000 WL 1557940, at *3; *see also Miramar Police Officers' Ret. Plan v. Murdoch*, No. CV 9860-CB, 2015 WL 1593745, at *9 (Del. Ch. Apr. 7, 2015). In *AA Sales & Assocs.*, for example, the parties entered into a settlement agreement requiring defendant and its "assigns and successors" to pay commission to plaintiff on all gross sales made to Ristance Corporation. 2000 WL 1557940, at *2.  Plaintiffs argued that the "assigns and successors" language in the settlement agreement encompassed "any person or

14

entity that acquire[d] the Ristance business in any way from [defendant.]" *Id*. The court, however, did not agree, explaining that "Successor, when used with reference to a corporation, is unambiguous," and "means another corporation which, through amalgamation, consolidation, or duly authorized legal succession, has acquired the rights and assumed the burdens of the initial corporation." *Id*. (internal quotations omitted). Under plaintiffs' construction, the court explained, defendant would be "perpetually liable for commission." *Id*. at *3. The court could not "sanction a contract interpretation that creates a fantastic condition precedent to one of the party's obligations." *Id*. The "legal definition of successor is", the court held, "the only one that effectuates all of the provisions of the settlement agreement and avoids an absurd result." *Id*. at * 3.

Likewise, in *Murdoch*, the Court of Chancery of Delaware also declined to broadly extend contractual obligations of a signatory to a settlement agreement to any and all purchasers of assets. 2015 WL 1593745 *1-2. The Delaware court in *Murdoch* considered whether obligations under a settlement agreement could be extended to purchasers of isolated assets of a media company where the settlement agreement language was even broader than that in Paragraph 24 of the Second Modified Consent Decree: binding "transferees, successors and assigns." The court held that the proper construction of the term "transferees, successors and assigns" turned not on whether any assets, liabilities, rights, or obligations were

transferred to the third-party, but whether "the rights and obligation *under the Settlement Agreement* were transferred." *Id.* at *8 (emphasis in original).

The court in *Murdoch* found that an interpretation in which every purchaser of assets became a "transferee, successor and assign" would lead to absurd results that no reasonable person would have accepted when entering the contract. *Id.* at *9. The court further elaborated on the absurdity of such a position, explaining that such an interpretation would bind every subsequent purchaser of any assets *ad infinitum* into the future:

> Examples readily come to mind demonstrating the absurdity of Plaintiff's argument. Plaintiff's interpretation would mean that were Old News Corp to sell some of its film equipment to, say, CBS Corporation, CBS would be a "transferee" of Old News Corp's assets within the meaning of the Settlement Agreement such that CBS would thereafter be bound by the rights plan restrictions of the Settlement Agreement. Similarly, under Plaintiffs' interpretation, if Old News Corp were to sell five television trucks to five different public entities, each of those entities would become subject to the rights plan restrictions of the Settlement Agreement. As these examples illustrate, **Plaintiff's interpretation would paralyze Old News Corp (and any public company with which it has done or wishes to do business) from engaging in even the most modest form of asset transfers due to the risk that counterparties would unwittingly find themselves bound to the rights plan restrictions in the Settlement Agreement as a "transferee" or "assign" of Old News Corp. That is an absurd result, in my view, that no reasonable person would have accepted when signing the Settlement Agreement** in order to resolve a relatively narrow breach of contract lawsuit.

16

*Id.* at *9 (emphasis added). Accordingly, the court in *Murdoch* concluded that "language providing that a contract is binding upon one's 'transferees, successors or assigns' (or the like) is intended to bind entities that assume, by legal succession, one's rights and obligations under the contract—*not* entities to which one may transfer or assign *other* assets or liabilities." *Id.* To conclude otherwise under such "broad" and "generic" terms would necessarily mean that the restrictions "would then apply to any entities to which the transferees and assigns of Old News Corp thereafter transfer or assign any of their own assets or liabilities, *ad infinitum*." *Id.*

Here, the district court's construction of the Consent Decree leads to the same absurd results decried in *Murdoch* and *AA Sales & Assocs.* For example, the Receiver has historically sold mining equipment and used the proceeds from these sales to fund reclamation.[4] However, if every such asset sale makes the purchaser a "successor and/or assign" under the Consent Decree, the Receiver will no longer be able to generate such funding: every potential asset purchaser will fear becoming subject to the broad restrictions and obligations of the Consent Decree.[5]

---

[4] Paragraph 26.r of the Receivership Order authorizes the Receiver to sell property of the Receivership Estate with approval of the Business Court. (*See* JA441-442).

[5] Notably, Appellee Appalachian Headwaters receives a portion of these proceeds resulting from liens against Receivership Estate property they hold until the

Likewise, what third party would ever accept the transfer of a mining permit if doing so obligated the transferee to all the reclamation obligations of that permit, but limited mining to only that "necessary and incidental" to reclamation as defined by the district court? Such limited mining would not pay for the cost of reclamation, much less allow the transferee to turn a profit. The district court's interpretation effectively renders the transfer provisions of Paragraph 25 mere surplusage.

The district court's conclusion that this case is somehow distinguishable from *Murdoch* because the Chestnut Oak Permit is "an asset at the heart of the Consent Decree" is without any basis. (*See* JA515-516). "[T]he scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Armour,* 402 U.S. at 682. The Decree "cannot be said to have a purpose", and therefore, there is no principled basis upon which the district court could have concluded that the Chestnut Oak permit is an asset at the heart of the Decree. *See id*. at 681. Moreover, the fact that the Decree does not include the Chestnut Oak Permit as a "Covered Permit"[6] undermines the district court's conclusion. *See* Section II, *infra*.

---

balance of the $6,000,000 consideration for the Selenium Settlement Agreement is satisfied. (*See* JA337).

[6] "'Covered Permits' shall mean permits that were the subject of this litigation as those permits are now in effect and as they may be amended, modified, or

Contrary to the district court's assertion, the *Armour* case does not "cut[] against Defendant in that it proposes a broad definition for 'successors and assigns.'" (JA517 (citing *United States v. Armour & Co*., 402 U.S. 673 (1971)). In that case, Armour was subject to a consent decree forbidding it from engaging in Greyhound's line of business, and the Government argued that Greyhound's proposal to purchase a majority of the stock of Armour violated the consent decree. 402 U.S. at 674-75. The Supreme Court of Appeals of the United States disagreed, holding that the consent decree did not bar the proposed acquisition because Greyhound was not bound by Armour's consent decree. *Id*. at 683. The Court noted that if a "'successors and assigns' clause had been included, the Government could argue with some persuasiveness that ownership of a meatpacker [Armour] by a controlling interest in a retail food firm [Grayhound] was prohibited." *Id*. at 680.

The Receiver does not contest that Greyhound's acquisition of a majority of Armour's stock would have made Greyhound a successor of Armour, and that is not inconsistent with the Receiver's arguments. Receiver cited to the *Armour* case for the general proposition that "the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it." *Id*. at 682. It is unclear how the district court managed to

---

renewed, following the procedures for such amendment, modification, or renewal prescribed by the applicable federal and state statutes and regulations and interpreted by this Court in relevant decisions for the duration of this Second Modified Consent Decree[.]" (JA300).

19

conclude that the Supreme Court's usage of the term "successors and assigns" in *Armour* differs from that urged by the Receiver. The transfer of a mining permit, unlike the acquisition of a company's stock, does not trigger successorship liability, and the *Armour* Court does not suggest otherwise.

Additionally, the district court's reliance on the definition of the term "successor in interest" found in regulations promulgated under the SMCRA and WVSCMRA to support its expansive interpretation of "successors" is misplaced. "Successors" are not the same as "successors in interest." *See* Black's Law Dictionary (11th ed. 2019) (defining a "successor" as a "corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an early corporation" and a *"*successor in interest" as "one who follows another in ownership or control of property."). Thus, unlike a successor, which succeeds to the rights and liabilities of a corporation through a stock purchase or merger of companies, a "successor in interest" succeeds only to those rights associated with the ownership or control of specified property. Consistent with this general usage, the SMCRA and WVSCMRA's regulations define "successor in interest" as "any person who succeeds to rights granted under a permit, by transfer, assignment, or sale of those rights." 30 C.F.R. § 701.5; W.Va. Code R. § 38-2-2.122.

20

The Second Modified Consent Decree does not use the term "successor in interest,"  and the district court clearly erred when it equated the general contract term "successor" to the term "successor in interest" defined by regulation. *See Holland v. New Era Coal Co., Inc*., 179 F.3d 397 (6th Cir. 1999) (hereinafter *Holland*); *see also, e.g., Holland v. Williams Mtn. Coal Co*., 2000 WL 284298, *3 (D.D.C. Feb. 24, 2000) (rejecting the argument that the terms "successors" and "successors in interest" are interchangeable), *aff'd* 256 F.3d 819 (D.C. Cir. 2001); *UMWA 1992 Ben. Plan v. Lecki Smokeless Coal Co*., 201 B.R. 163, 169 (S.D.W. Va. 1996) (holding that "a distinction must be drawn between 'successor' and 'successor in interest' and that Plaintiffs erroneously use the two terms interchangeably.").

The district court not only attempted to use the terms "successor" and "successor in interest" interchangeably, but actually appeared to misunderstand the common usage of these terms.  As described above, the term "successor" is used when a party assumes the rights and obligations of another party, whereas the term "successor in interest" is reserved for circumstances where one party merely acquires an interest in property from another.  The district court, however, incorrectly opined that a "successor in interest" requires a "greater enmeshment between two corporate entities" than a "successor":

> Even assuming, *arguendo,* that the Consent Decree did
> not provide clear instructions for defining terms,

21

> Defendant's argument would still not hold weight—in contending that "successor in interest" and "successor" are not interchangeable, Defendant draws attention to the fact that "successor-in-interest" generally has a more limited definition, one that is narrower than the mere "successor" status required to bind a third-party permit transferee under the Consent Decree. In other words, a "successor in interest" requires a greater enmeshment between two corporate entities than a "successor," meaning that an entity that is a "successor in interest" would be a "successor," too.

(JA516). With all due respect, the district court has it backwards. There is "greater enmeshment" in a "successor" relationship.

The district court's confusion seems to stem from its reading of *Holland*. The Receiver cited *Holland* for the general proposition that the terms "successor in interest" and "successor" are not interchangeable. However, in an effort to distinguish this case, the district court apparently focused on how the terms "successor" and "successor in interest" are used under the Coal Act, which was at issue in *Holland*. In *Holland*, the court noted that a "successor in interest" could be liable for retiree health under the Coal Act, whereas a "successor" would not. 179 F.3d at 403. However, that ruling was unique to the Coal Act. Nothing about the decision in *Holland* stands for the general proposition that a "successor in interest" requires "greater enmeshment" between two corporate entities than a "successor." Nor does *Holland* support the district court's conclusion "that a

'successor in interest' would be a 'successor' too." (JA516). As described above, an overwhelming number of courts have found the opposite to be true.

Clearly, the most reasonable conclusion is that the term "successor in interest," as used in SMCRA/WVSCMRA is something different than the term "successor" as used in the Second Modified Consent Decree. Construing the terms "successor" and "successor in interest" as being the same deprives the "in interest" language of any meaning, rendering it mere surplusage. *See In re Total Realty Mgt., LLC*, 706 F.3d 245, 251 (4th Cir. 2013) ("[p]rinciples of statutory construction require 'a court to construe all parts to have meaning' and, accordingly, avoid constructions that would reduce some terms to mere surplusage.").

Moreover, the Court should not ignore the fact that the parties, both well-versed in surface mining laws, chose not to use the term "successor in interest" in drafting the Decree. "Words matter . . . ." *Consumer Fin. Prot. Bureau v. Klopp*, 957 F.3d 454, 464 (4th Cir. 2020) (citing *Quadrant Structured Prod. Co. v. Vertin*, 23 N.Y.3d 549, 992 N.Y.S.2d 687, 16 N.E.3d 1165, 1172 (2014) ("[I]f parties to a contract omit terms—particularly, terms that are readily found in other, similar contracts—the inescapable conclusion is that the parties intended the omission."). The Decree "must be construed as it is written, and not as it might have been written had the plaintiff established his factual claims and legal theories in

23

litigation." *Armour*, 402 U.S. at 682. Here, the parties used "successors and/or assigns," not "successors in interest."  As demonstrated above, courts have long recognized that these are distinct terms, and the district court therefore clearly errored when it conflated them.

Finally, the district court misapplies *M&G Polymers USA, LLC v. Tackett*, 574 US 427, 443 (2015), which it cites for the proposition that "[t]o determine what the contracting parties intended a court must examine the entire agreement in light of relevant industry-specific customs, practices, usages, and terminology." In fact, that quote came from the concurring opinion of Justice Ginsburg, not the majority opinion. The majority's recitation of the applicable rule of law is far narrower: "Although a court **may** look to known customs or usages in a particular industry to determine the meaning of a contract, **the parties must prove those customs or usages using affirmative evidentiary support in a given case**." *Id*. at 439 (emphasis added). In this case, no affirmative evidence was introduced on custom and usage, and therefore, the district court errored in relying on so-called custom and usage to support its analysis.

More significantly, industry custom and usage can only be used under West Virginia law if a contractual term is ambiguous. The Fourth Circuit Court of Appeals, applying West Virginia law, recently refused to consider industry custom

because it found a specific contract term to be unambiguous using a dictionary definition:

> But while "[e]vidence of usage or custom may be considered in the construction of language of a written instrument which is uncertain or ambiguous," it "may not be considered to alter the legal effect of or to engraft stipulations upon language which is clear and unambiguous." *Cotiga Dev. Co. v. United Fuel Gas Co.*, 128 S.E.2d 626, 629 (W.Va. 1962). Because the Clause is unambiguous we need not go any further.

*Corder v. Antero Resources Corp.*, 57 F.4th 384, 400 (4th Cir. 2023). The Fourth Circuit also reached the same conclusion when applying South Carolina law, *Volvo Const. Equip. N.A. Inc. v. CLM Equip Co.*, 386 F.3d 581, 598-99 (4th Cir. 2004), and federal maritime law, *Commercial Union Ins. Co. v. Charleston Marine Leasing Co.*, 1995 WL 224046, at *4 (4th Cir. 1995). Indeed, the district court has itself favored dictionary definitions over industry custom and usage when construing the Consent Decree. (*See* JA468-469).

As explained above, the boiler plate "successor and/or assigns" language of the Decree has a well-established legal definition and is not ambiguous. There is no reason to believe that that usage differs in the coal industry. *See Willits v. Peabody Coal Co.*, 188 F.3d 510 (6th Cir. 1999) (finding that the term "successor" in coal royalty contract means "another corporation which, through amalgamation, consolidation, or other legal succession, becomes invested with rights and assumes burdens of the first corporation."). The district court had no need to consider

industry custom and no evidence was submitted on the issue. Accordingly, the district court's reliance on custom and usage was improper.

**II.   PARAGRAPH 25 PLAINLY PROVIDES THAT THE TRANSFEREE OF THE CHESTNUT OAK SURFACE MINE PERMIT IS NOT BOUND BY PARAGRAPH 63'S PROHIBITIONS ON SURFACE MINING.**

Paragraph 25 of the Consent Decree, which specifically governs permit transfers, does not require the Receiver to ensure that a permit transferee complies with the restrictions in Paragraph 63. (*See* JA298-299). Indeed, Paragraph 25 expressly exempts from compliance "those restrictions on Large Scale Surface Mining set forth in Paragraphs 54 through 58 . . . and the restrictions on Surface Mining set forth in Paragraph 63" from general obligations under the Decree whose compliance ERP/Receiver is generally charged with ensuring. (*See* JA298-299).

Additionally, Paragraph 25 refers to the "transfer of ownership or operation of any **Facility.**" (JA298-299 (emphasis added)). Pursuant to Paragraph 27.l, "Facility" or "Facilities" refers to "Covered Outfalls and mining operations subject to the Covered Permits." (JA301). The "Covered Permits" are listed in Paragraph 27(g):

> "Covered Permits" shall mean permits that were the subject of this litigation as those permits are now in effect and as they may be amended, modified, or renewed, following the procedures for such amendment, modification, or renewal prescribed by the applicable federal and state statutes and regulations and interpreted

> by this Court in relevant decisions for the duration of this Second Modified Consent Decree, including: WV/NPDES Permit Nos. WV0099520, WV0093751, WV0096920, WV0096962, WV1014684, WV1O17225, WV0099392, WV1016776, WV1020889, and WV1021028.

(JA300). The WV/NPDES Permit associated with the Chestnut Oak Surface Mine permit (S503308) is WV1019759, which is not a "Covered Permit." Because this permit is not a "Covered Permit," the Chestnut Oak Surface Mine cannot be a "Facility." As a result, Paragraph 25 places no obligations on the Receiver with respect to the transfer of the Chestnut Oak Surface Mine permit.

Rather than read Paragraph 25 as a whole to say what it clearly says, the district court breaks the paragraph into two parts which it construes so as to be consistent with its foregone conclusion that Paragraph 24 binds third-party permit transferees as "successors and/or assigns." (*See* JA519). The first part of the paragraph, the district court explains, "outlines the obligations of a transferor, whereas the last sentence outlines those of a transferee." (JA519). So, while the district court ostensibly concedes that the first part of Paragraph 25 expressly exempts transferors "from the restrictions on Surface Mining set forth in Paragraph 63", it nonetheless concludes that third party transferees would be bound by those restrictions. (*See* JA519).

The district court's construction of Paragraph 25 is nonsensical. Consent decrees should not be construed as binding third parties. *See Davis*, 775 F. Supp. at

168. Paragraph 25 would not expressly exempt a Facility's transferor—a party to the Decree—from ensuring compliance with the Consent Decree's prohibitions on surface mining, but not other obligations imposed by the Decree, unless it were understood that transferees—which are not parties to the Decree—would be permitted to mine the transferred permits.

The last sentence of Paragraph 25 must be read in the context of the overall Decree. If the last sentence of Paragraph 25 were intended to bind all transferees, subsequent owners, and operators of **all** permits, as the district court suggests, it would have been completely unnecessary to address the applicability of the provisions of the Decree to transferees of "Facilities," as well as the applicability of Paragraphs 54 through 58 and 63, in the first part of Paragraph 25. If the parties ultimately intended for all transferees of every permit to be bound by the terms of the Decree by operation of the last sentence of Paragraph 25, then that would be the only sentence necessary to be included in the paragraph. It is a fundamental rule of contract interpretation that courts must give effect to every clause and term "rather than leave a portion of the contract meaningless or reduced to mere surplusage." *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1127 (4th Cir. 1993). The district court's interpretation of Paragraph 25 renders almost all of Paragraph 25 surplusage.

Moreover, the district court's fixation on the final sentence of Paragraph 25 not only ignores the rest of that paragraph, it even ignores the final clause of that sentence. The final sentence of Paragraph 25 provides that: "[i]n any event, all transferees, subsequent owners, and operators shall be bound by the terms of this Second Modified Consent Decree, **consistent with applicable law**." (JA298-299 (emphasis added)). This clause ensures that third parties are bound only where they would otherwise be bound under "applicable law." For example, under applicable law, "subsequent owners" are bound to agreements made by predecessors following stock sales, but not asset sales. *See, e.g.*, *Philadelphia Elec. Co. v. Hercules, Inc.*, 762 F.2d 303, 308–09 (3d Cir. 1985). But there is no "applicable law" that generally binds permit transferees to the agreements made by transferors. In fact, the law is to the contrary.

The district court's interpretation of Paragraphs 24 and 25 is also inconsistent with Paragraph 61 of the Decree. Paragraph 61 provides that the "limitations on Large Scale Surface Mining shall not transfer to [] any purchaser of any asset (other than stock) of Substituted Defendant or any of its Affiliated Companies[.]" (JA332-333). There is no way to read Paragraph 61 consistently with the district court's construction of Paragraphs 24 and 25 because the district court has effectively barred any third-party transferee from ever mining a transferred permit unless mining is necessary and incidental to reclamation. Under

the district court's interpretation, transferees would never be able to engage in large scale mining, rendering Paragraph 61 surplusage. On the other hand, Paragraph 61 is consistent with a usage of "successors and assigns" urged by the Receiver, which includes purchasers of stock, but not other assets.

A contextual reading of Paragraph 25 provides a very logical approach to compliance with the terms of the Decree in the event of a transfer of a "Facility" that gives effect to *every* sentence in the paragraph, while also not rendering it in conflict with the general rule that non-parties to contracts/consent decrees may not be unilaterally bound to their terms.

Paragraph 25 provides that no transfer or ownership of a "Facility" will relieve the Receiver of its obligation to ensure that the terms of the Decree are implemented—*except for* the restrictions in Paragraphs 54 through 58 and Paragraph 63. That is, the Decree imposes a duty upon the Receiver to ensure compliance with the terms of the Consent Decree at a Facility (excluding Paragraphs 54-58 and 63) after ownership is transferred, but does not (and cannot under applicable law) unilaterally impose a compliance obligation upon the non-party transferee who has not consented to be bound to the terms of the Decree.

The next sentence in the paragraph provides the Receiver with the option of requiring the non-party transferee to provide written notice to the district court that it *will* be bound by all terms of the Decree, effectively making the transferee a

party to the Decree.  In such event, Paragraph 25 provides that the "transferring party" (the Receiver, in this case) will be relieved of both the obligation to comply with the terms of the Decree and/or to ensure compliance with the Decree's provisions (again, except for Paragraphs 54-58 and 63, which are excepted from provisions the Receiver is charged with enforcing) by the transferee of the Facility. The final sentence of Paragraph 25 operates to ensure that, no matter which route the Receiver chooses—be it the Receiver ensuring compliance at the transferred Facilities or the transferee agreeing the be bound under the terms of the Decree— all transferees, subsequent owners, or operators of Facilities will, in some way, be bound to follow the terms of the Second Modified Consent Decree "consistent with applicable law," which, again, does not authorize entities to be unilaterally bound by contracts to which they are not parties.  Ultimately, this is the only reading that gives the entirety of Paragraph 25 effect.

## CONCLUSION

Because third-party permit transferees are not "successors and assigns" and because Paragraph 25 of the Second Modified Consent Decree definitively establishes that Paragraph 63's prohibitions on surface mining do not apply to third-party permit transferees, the Receiver respectfully requests that this Court reverse the district court's order granting Plaintiff-Appellees' Motion to Enforce the Second Modified Consent Decree.

## REQUEST FOR ORAL ARGUMENT

Doss Special Receiver, LLC respectfully requests oral argument for this appeal.

Respectfully submitted,

**DOSS SPECIAL RECEIVER, LLC**
**By Counsel**

/s/ *Christopher M. Hunter*
CHRISTOPHER M. HUNTER (WVBN 9768)
M. SHANE HARVEY (WVBN 6604)
**JACKSON KELLY PLLC**
P.O. Box 553
Charleston, West Virginia 25322
Telephone: (304) 340-1000

### UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 23-1696    **Caption:** West Virginia Highlands Conservancy, et al. v. ERP Environmental Fund, Inc., et al.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

☑  this brief or other document contains   **7,441**   *[state number of]* words

☐  this brief uses monospaced type and contains _____ *[state number of]* lines

This brief or other document complies with the typeface and type style requirements because:

☑  this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ *[identify word processing program]* in
Times New Roman, 14 Pt. _____ *[identify font size and type style]*; **or**

☐  this brief or other document has been prepared in a monospaced typeface using
_____ *[identify word processing program]* in
_____ *[identify font size and type style]*.

(s) Christopher M. Hunter

Party Name Doss Special Receiver, LLC on behalf of ERP Environmental Fund, Inc. and Receivership Estate Of ERP Environmental Fund, Inc.

Dated: August 21, 2023

04/12/2020 SCC